289 So.2d 882 (1974)
SOUTHERN PACIFIC TRANSPORT COMPANY
v.
F. C. DOYAL, Jr., Administrator, et al.
No. 6059.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1974.
Marion Weimer, James A. Piper and James A. McGraw, Baton Rouge, for F. C. Doyal, Jr., Administrator of the Dept. of Employment Security State of La., appellees.
Chaffe, McCall, Phillips, Toler & Sarpy by G. Phillip Shuler, III, New Orleans, for Southern Pacific Transport Co., appellant.
Before STOULIG and BOUTALL, JJ., and MARCEL, J. Pro Tem.
BOUTALL, Judge.
This is an appeal by an employer from an adverse decision in favor of the Administrator, State of Louisiana, Department of Employment Security and a discharged employee, holding that the discharged employee was not guilty of misconduct such as to disqualify him from receiving unemployment compensation benefits. We reverse.
The record shows the following facts and calendar of events. Appellant, Southern Pacific Transport Company hired Joseph *883 V. Blanda as a truck driver in February, 1964. In September, 1969, Blanda was discharged for violation of the company's policy regarding the personal appearance of the employee, particularly in regard to Blanda's hair. Blanda filed a complaint with the joint Rail-Truck Grievance Committee of the employer and his Union, and he was reinstated with lost time pay. This situation is not the subject of this suit, except to relate the history. The reason for the reinstatement was that no grooming regulations were in the Union contract between the company and the Union.
Later, however, the employer and the Union did enter into an agreement, and Article 8 of the contract provided: "The employer has the right to establish and maintain reasonable standards for wearing apparel and personal grooming." As a consequence of this agreement, the employer on October 2, 1970 posted the following special notice to all employees, which, after referring to Article 8 of the Union contract, read in pertinent part as follows: "Each employee must have a conventional hair cut, must be clean shaven; * * * *". On February 10, 1971, a letter was sent to Blanda by the company Assistant Terminal Manager referring to a conversation of the previous day when inquiry was made about Blanda's haircut, and he was warned that his failure to get a haircut or to respect the company's supervisory employees could lead to disciplinary action. Apparently Blanda complied to a degree with this warning.
However, on February 22, 1972 the employer sent Blanda a letter telling him that his personal appearance was not acceptable because he had reported to work wearing an armed force insignia on the fly of his trousers. The letter further stated that Blanda had reported to work three times wearing the insignia on the trouser fly, and three times Blanda had been sent home to change his clothes, because the company felt that wearing the insignia in such a location could be offensive to its customers. For what it called this "gross insubordination" the employer suspended Blanda for a period of two weeks.
On February 23, 1972, the company, through its Terminal Manager, issued Blanda another letter warning him that his haircut did not comply with company regulations and promised disciplinary action if he did not conform to company policy by February 28th. Blanda testified that he complied with the regulations, and since he was thereafter working out of the Houma, Louisiana terminal that Mr. Clark, the Terminal Manager at Houma, had informed him that the haircut was satisfactory. However, the record discloses that on April 12, 1972 he was issued another warning letter by the Houma Terminal Manager, John Clark, requesting that he have his hair cut by Monday, April 17, 1972. He reported for duty at another terminal on April 14, 1972 and was told by one of the supervisors, Dick Graphia, that his haircut was unacceptable and it was necessary that his hair be cut one inch above the ordinary shirt collar line. Graphia also notified Blanda that he had until April 17th to cut his hair. On Monday, April 17th, he reported for duty and still did not have his hair cut in accordance with the regulations. He was thereupon suspended until he complied with the regulation. Blanda then applied for relief to the joint Rail-Truck Grievance Committee, which considered his case on May 3, 1972 and rejected his claim. The Committee's decision was: "Reinstatement without pay when in compliance with company rules and Article 8 of contract. Compliance must be within ten days and he must stay in compliance thereafter." Accordingly, after failure to comply the company discharged Blanda on May 13, 1972.
Blanda then applied for unemployment compensation benefits and the Department of Employment Security determined he had been discharged for misconduct in connection with his employment. He appealed to the Appeals Referee, and the Referee reversed the disqualification. The company then appealed through the Administrative Process which maintained the decision of *884 the Appeals Referee, and then to the 24th Judicial District Court. That court also maintained the decision of the Appeals Referee, and the appeal to this court followed.
The decision of the Appeals Referee found the basic facts to be substantially as above set forth but found that Blanda was never specifically told the requirements of the employer as to a conventional hair cut until April 14, 1972, the last date of Employment, and it was only then that the employee willfully failed to comply with unambiguous instructions. He then made the following conclusion: "Since there was no violation of safety requirements and in the absence of definitive damage or intent to damage the employer's interest, I find that his noncompliance does not constitute insubordination and, thus, not legal misconduct in connection with employment. The evidence, reduced in simplest forms, establishes that this was a controversy as to whose set of values, regarding hair style, would prevail."
We believe the decision to be in error in the conclusions reached from the facts above referred to. While we concede that the term "Conventional haircut" may indeed be an unspecific term in relation to the style of haircutting for men in the year 1972, nevertheless we cannot overlook the long history of involvement of this man with the company over the length of his hair and his general appearance. The question here is not simply a matter of whose set of values regarding hair styles would prevail. By a contract between the employer and the bargaining agent of the employee, the employer was granted the right to determine which hair style would prevail. The record is replete with numerous warnings as to how and why the employee was in violation of the rule, and he was granted more than sufficient time to comply with the rule. As we view the issue here it is a case of an employee who chooses to attempt to impose his standards upon his employer, despite his agreement to the contrary through his Union.
Blanda was employed by the appellant as a truck driver, and in accordance with his employment, he made pickups and deliveries of various goods to and from customers of Southern Pacific. No evidence of adverse customer reaction over Blanda's appearance was introduced, but it is not necessary for an employer to show that the activity of an employee has caused it loss. Rather, it need simply be shown that there occurred willful violation by an employee of a reasonable rule of his employer. See Fouts v. Delta Southern Company, 273 So.2d 909 (La.App. 1st Cir., 1973). The importance of employee appearance in dealing with the public is well expressed in Fagan v. National Cash Register Company, 481 F.2d 1115 (C.A.D.C., 1973) wherein the court stated:
"Perhaps no facet of business life is more important than a company's place in public estimation. That the image created by its employees dealing with the public when on company assignment affects its relations is so well known that we may take judicial notice of an employer's proper desire to achieve favorable acceptance. Good grooming regulations reflect a company's policy in our highly competitive business environment. Reasonable requirements in furtherance of that policy are an aspect of managerial responsibility. ..."
We determine that the regulation is a reasonable one, and we cannot view the activity of the employee in any other light than a deliberate violation of the rule and an act of willful disregard of the employer's interest. This constitutes disqualification for benefits under the Unemployment Compensation Act. We refer to LSA-R.S. 23:1601 which states in pertinent part as follows:
"LSA-R.S. 23:1601(2). Disqualification for benefits.

*885 "An individual shall be disqualified for benefits:
* * * * * *
"(2) If the administrator finds that he has been discharged for misconduct connected with his employment. * * *"
Disqualifying conduct has been defined by the Supreme Court of Louisiana in the case of Horns v. Brown, 243 La. 936, 148 So.2d 607, at p. 609, as follows:
* * * "`Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. * * *'"
For the foregoing reasons we are of the opinion that the judgment appealed from should be reversed. Accordingly, it is ordered, adjudged and decreed that the judgment appealed from is now annulled and reversed, and there is judgment herein in favor of appellant, Southern Pacific Transport Company and against appellees, F. C. Doyal, Jr., Administrator, State of Louisiana, Department of Employment Security, and Joseph V. Blanda, adjudging claimant Joseph V. Blanda ineligible for benefits under the Louisiana Employment Security Law during the weeks in question and that any benefit charges made to appellant's experience rating record as a result of the claim for benefits herein be removed. Costs of these proceedings to be cast upon defendant-appellees to the extent permitted by law.
Reversed and rendered.